IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| KERMIT POULSON, <br><br> Plaintiff, <br><br> vs. <br><br> WARDEN KIRKEGARD, et al., <br><br> Defendants. | CV 14-000043-H-DLC-JTJ <br><br> ORDER |

On February 11, 2015, Plaintiff Kermit Poulson, an inmate proceeding in forma pauperis and without counsel, filed an Amended Complaint. (Doc. 16.) The Court conducted a screening of the Amended Complaint pursuant to 28 U.S.C. §§ 1915 and 1915A; the only allegations that stated a claim were Mr. Poulson's allegations against Beau Baltezar, Derick Budd, Garrett Kent, Same Short, Josh Sweeney, and Jason Trudeau for an alleged excessive use of force on June 24, 2014. (Doc. 19.)

The following motions are pending:

1. Plaintiff's Motion for Summary Judgment (Doc. 66);
2. Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 70);
3. Defendants' Motion to Strike (Doc. 79);
4. Defendants' Motion for Protective Order (Doc. 80);
5. Defendants' Cross Motion for Summary Judgment (Doc. 82); and
6. Mr. Poulson's Motion for Leave to Take Depositions (Doc. 88).

1

Defendants have met their burden of demonstrating that Mr. Poulson failed to exhaust his administrative remedies. Therefore, their Motion for Summary Judgment for Failure to Exhaust Administrative Remedies should be granted and this matter dismissed.

In light of this recommendation, the remaining Motions for Summary Judgment should be denied as moot. Defendants' Motion to Strike and Motion for Protective Order will be granted. Mr. Poulson's motion for leave to take depositions will be denied.

## I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

### A. Standard

The Ninth Circuit in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc), held that the proper procedural device for determining whether administrative remedies have been exhausted is a motion for summary judgment. *Id*. at 1168. Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The party moving for summary judgment has the initial burden of showing there is no genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If the moving party makes a prima facie showing that summary judgment is appropriate, the burden shifts to the opposing

party to show the existence of a genuine issue of material fact. *Id.* On summary judgment, all inferences should be drawn in the light most favorable to the party opposing summary judgment. *Id.* at 159.

A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

By notice provided on March 25, 2016 (Doc. 85), Mr. Poulson was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## B. Facts[1]

The Montana Department of Corrections (DOC) implemented the grievance process in 1997, which is codified in the Montana State Prison (MSP) Operational Procedures as MSP Procedure § 3.3.3. (Defendants' Statement of Undisputed Facts (SUF), Doc. 72 at ¶ 2, citing Cobban Aff., Doc. 72-1 at ¶ 5.) Upon their

---

[1] Mr. Poulson failed to file a statement of undisputed facts with his motion for summary judgment and he did not file a statement of disputed facts in violation of Local Rule 56.1(b). Therefore, the facts taken from Defendants' Statement of Undisputed Facts (Doc. 72) are deemed undisputed unless contradicted elsewhere in the record.

arrival at MSP, all inmates must attend an orientation on MSP and DOC policies and procedures. (SUF, Doc. 72 at ¶ 3, citing Cobban Aff., Doc. 72-1 at ¶ 6.) On May 14, 2014, Mr. Poulson signed an acknowledgment that he had attended the orientation. (SUF, Doc. 72 at ¶ 4, citing Cobban Aff., Doc. 72-1 at ¶ 7.) Mr. Poulson specifically acknowledged that MSP staff had explained to him, and answered any questions he had in relation to, the MSP grievance process. (SUF, Doc. 72 at ¶ 5, citing Cobban Aff., Doc. 72-1 at ¶ 9.)

Pursuant to MSP Procedure 3.3.3(III)(B)(1), an inmate may grieve "issues including, but not limited to, health care, staff conduct, written policy or procedures, and other standard grievance matters such as property, mail, food service, conditions of confinement, program access, or religious issues." (SUF, Doc. 72 at ¶ 6, citing Cobban Aff., Doc. 72-1 at ¶ 9.) "Classification, disciplinary, and any other decision which is subject to a separate appeal procedure or administrative review process, are not grievable under the inmate grievance program." (SUF, Doc. 72 at ¶ 7, citing Cobban Aff., Doc. 72-1 at ¶ 10.)

As the initial step of the grievance process, an inmate must file an informal grievance with his unit manager or designee within five working days of the act or omission that led to the complaint. (SUF, Doc. 72 at ¶ 8, citing Cobban Aff., Doc. 72-1 at ¶ 11.) The informal grievance forms contain three, carbon-copy sheets: one

white sheet, one yellow sheet, and one pink sheet. (SUF, Doc. 72 at ¶ 9, citing Cobban Aff., Doc. 72-1 at ¶ 12.) The inmates are instructed, and required, to tear off and keep the pink copy after filing out their informal grievance. (SUF, Doc. 72 at ¶ 10, citing Cobban Aff., Doc. 72-1 at ¶ 13.) The pink copy serves as the inmate's evidence that he in fact filled out and submitted the informal grievance to MSP staff in the event that MSP staff lose or fail to process the informal grievance. (SUF, Doc. 72 at ¶ 11, citing Cobban Aff., Doc. 72-1 at ¶ 14.) Upon receipt of the informal grievance, the unit managers enter the grievance in a central log book that is kept in each unit. (SUF, Doc. 72 at ¶ 12, citing Cobban Aff., Doc. 72-1 at ¶ 15.) The unit manager or designee where the grieving inmate is housed then has 20 working days in which to respond to the inmate's informal grievance. (SUF, Doc. 72 at ¶ 13, citing Cobban Aff., Doc. 72-1 at ¶ 16.) An inmate has five working days to file a formal grievance from either the date of the response to his informal grievance; if he does not receive a response to his informal grievance, the inmate has 25 days after having filed his informal grievance. (SUF, Doc. 72 at ¶ 14, citing Cobban Aff., Doc. 72-1 at ¶ 17.)

From June 24, 2014, through July 1, 2014, the grievance office did not receive any informal grievances from Mr. Poulson. (SUF, Doc. 72 at ¶ 17, citing Cobban Aff., Doc. 72-1 at ¶ 20.) During this time period, the grievance office

received only one formal grievance from Mr. Poulson. (SUF, Doc. 72 at ¶ 18, citing Cobban Aff., Doc. 72-1 at ¶ 21.) Mr. Poulson's grievance was dated June 30, 2014, and he made the following statement:

> 6/30/2014, MSP Max, I grieve Hearings Officer for finding of guilt, event though I had a material witness statement who wrote to my innocence, write up is retaliation, which is illegal under the ADA of 1990, I do not fee bad for myself. Officer accused me of pity, I have not pity, I needed compassion. He did not listen to fact or [unreadable]. I have 2 disabilities, I am autistic, and paralyzed, I could not hear officer tell me to "cuff up" because of cell noise, I will sue the IPS officer, and hearings officer in federal court for ADA Rule 1997d violations, and to the ACLU, and HAB. I wrote to them about abuse of write up, I grieve the write up, the staff who slammed my head into the concrete, and I grieve the decision of hearings officer. This is my resolution: dismiss write-up, since medical did not take me for CT scan and I suffered head trauma, resulting in loss of hearing, and loss of vision, I was denied proper attention.

(June 30, 2014 grievance, Doc. 72-1 at 28.) The response on the grievance was: "Disciplinary decisions are not grievable. Not processed." *Id.* The response was dated July 2, 2014.

### C. Discussion

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

6

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524–25 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). This means a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion is mandatory. *Booth v. Churner,* 532 U.S. 731, 741 (2001); *Jones v. Bock*, 549 U.S. 199, 211 (2007). Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Once the defendant has carried that burden, the prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

7

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, __ U.S. __, 136 S.Ct. 1850, 1858 (June 6, 2016) *citing Booth*, 532 U.S., at 737–38. Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. at 1859, *quoting Booth*, 532 U.S., at 738.

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, __ U.S. at __, 136 S.Ct. at 1859.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id*. (internal quotation marks and alteration omitted).

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process

through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id*. at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172–73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

It is undisputed that MSP has a grievance procedure and that Mr. Poulson was made aware of this procedure. Arguably, Mr. Poulson filed a grievance regarding the IPS staff when he stated in the June 30, 2014 grievance "I grieve the write up, the staff who slammed my head into the concrete, and I grieve the decision of the hearings officer." (Doc. 72-1 at 28.) The grievance was not processed because it was a disciplinary decision. However, the grievance form specifically provides that Mr. Poulson had a right to appeal the response. Mr. Poulson signed the form indicating that he intended to appeal, yet there is no

9

evidence that an appeal was filed.  In addition, the response indicated that the grievance was not processed.  MSP Policy provides that an inmate may resubmit an unprocessed grievance within 48 hours.  (MSP Policy 3.3.3(III)(F)(8), Doc. 72-1 at 14.)  There is no evidence that Mr. Poulson resubmitted his grievance after it was returned as not processed.  Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies should be granted.

## II.  MOTION TO STRIKE SUPPLEMENT

On March 14, 2016, Mr. Poulson filed a document entitled "Supplement to Support 1983 A 42 U.S.C. Complaint."  (Doc. 65.)  Defendants moved to strike the supplement on the grounds that the deadline for amending pleadings was June 19, 2015.  (Scheduling Order, Doc. 29.)  Although Mr. Poulson's document appears to be more argument, not an actual amendment to the pleadings, Defendants are correct that the deadline for amendments to the pleadings was June 19, 2015, and Mr. Poulson failed to demonstrate good cause to amend after this deadline.  The motion will be granted.

## III.  MOTION FOR PROTECTIVE ORDER

Defendants move for an order protecting them from having to respond to Mr. Poulson's discovery requests submitted months after the close of discovery.  Mr. Poulson apparently served discovery requests upon Defendants on March 21,

2016, but the discovery deadline in this matter was October 5, 2015. (Scheduling Order, Doc. 29.) Mr. Poulson did not respond to the motion for protective order. Pursuant to Local Rule 7.1(d)(1)(B)(ii), a "failure to file a response brief may be deemed an admission that the motion is well-taken." Mr. Poulson did not respond to Defendants' motion, and he served discovery requests outside the discovery period. Defendants' motion for protective order will be granted.

**IV. MOTION FOR LEAVE TO TAKE DEPOSITIONS**

In his motion for leave to take the depositions of Defendants, Mr. Poulson requests leave to take depositions outside the discovery period. He seeks an order requiring the Warden of MSP to provide a method of recording the depositions. Not only is this request outside the discovery period as set forth above, it is improper. As set forth in Rule 30 of the Federal Rules of Civil Procedure, the noticing party bears the recording costs. Fed.R.Civ.P. 30(b)(3)(A). The motion will be denied.

Based upon the foregoing, the Court issues the following:

**ORDER**

1. Defendant's Motion to Strike Supplement (Doc. 79) is **GRANTED**.

2. Defendants' Motion for Protective Order (Doc. 80) is **GRANTED**.

3. Mr. Poulson's Motion to take Depositions (Doc. 88) is **DENIED**.

11

4. At all times during the pendency of this action, Mr. Poulson must immediately advise the Court of any change of address and its effective date. Failure to file a "Notice of Change of Address" may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Further, the Court issues the following:

## RECOMMENDATIONS

1. Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 70) should be **GRANTED,** and this matter should be dismissed with prejudice. The Clerk of Court should be directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

2. Mr. Poulson's Motion for Summary Judgment (Doc. 66) and Defendants' Cross Motion for Summary Judgment (Doc. 82) should be **DENIED AS MOOT**.

3. The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. No reasonable person could suppose an appeal would have merit. The record makes plain the instant Complaint lacks arguable substance in law or fact.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[2] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a) should not be filed until entry of the District Court's final judgment.

DATED this 11th day of August, 2016.

                                          */s/ John Johnston*
                                          John Johnston
                                          United States Magistrate Judge

---

[2] As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.